**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WILLIAM ULYSSES MATTHEWS,

      Petitioner,

v.                                                  Case No. 8:21-cv-103-WFJ-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

William Ulysses Matthews, a Florida prisoner, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 16). Mr. Matthews filed a reply. (Doc. 21). Upon consideration, the petition is **DENIED**.

## I.     Background

In May 2012, Mr. Matthews was charged in Florida state court with one count of sexual battery involving force likely to cause serious personal injury. (Doc. 16-1, Ex. A). In January 2013, he agreed to resolve the case by pleading guilty to one count of kidnapping. (*Id.*, Ex. C). The signed plea agreement indicated that the statutory maximum sentence for kidnapping was life imprisonment. (*Id.* at 9). The agreement also reflected that the "sentencing scoresheet" had been "fully explained" to Mr. Matthews. (*Id.*) The scoresheet, in turn, stated that the "lowest permissible prison sentence" was 75.9 months, while the "maximum sentence" was life imprisonment. (*Id.*, Ex. X, at 271).

1

As part of the plea deal, Mr. Matthews received a sentence of three years' imprisonment followed by five years of probation. (*Id.*, Exs. C, D). The order of probation informed Mr. Matthews that if he "violate[d] any of the conditions of [his] probation," the court "may revoke [his] probation . . . and impose any sentence that it might have imposed before placing [him] on probation." (*Id.*, Ex. E, at 23). The order of probation also indicated that Mr. Matthews would be subject to "the standard conditions of supervision," including that he (1) "live without violating any law," (2) refrain from "possess[ing] any drugs or narcotics unless prescribed by a physician," and (3) "promptly and truthfully answer all inquiries directed to [him] by the court or the [probation] officer." (*Id.* at 21). In addition, Mr. Matthews would be required to comply with "standard sex offender conditions," including a "mandatory curfew from 10 p.m. to 6 a.m." (*Id.* at 22).

Following his release from prison, Mr. Matthews began serving the probationary term of his sentence. In March 2015, his probation officer filed a "technical violation notification letter," informing the court that he had violated the mandatory-curfew condition of his probation. (*Id.*, Ex. G). The letter explained that Mr. Matthews had failed to "answer the door to [his] home" when law enforcement visited him at 11:59 p.m. (*Id.*) The court indicated that "[n]o further action was required" and ordered probation to "[c]ontinue to supervise" Mr. Matthews "if [he] [was] now in compliance." (*Id.*)

Two years later, in June 2017, Mr. Matthews's urine sample tested positive for cocaine. (*Id.*, Ex. H). Before the results came in, Mr. Matthews allegedly told his probation officer that he had not used "the illegal substance." (*Id.*) Based on these alleged violations of his probation conditions, a warrant was issued for his arrest. (*Id.*) A change-of-plea

hearing was held on July 31, 2017. (*Id.*, Ex. K). During the colloquy, Mr. Matthews indicated that he wished to waive his right to a "violation hearing" and "admit that [he] violated as alleged." (*Id.* at 58-59). The court accepted Mr. Matthews's plea as "freely and voluntarily given" and set the matter for sentencing. (*Id.* at 59). The sentencing scoresheet indicated that the "lowest permissible prison sentence" was 80.4 months, while the "maximum sentence" was life imprisonment.[1] (*Id.*, Ex. R, at 146).

During the sentencing hearing, Mr. Matthews's supervisor at McDonald's testified that he was "doing pretty good [at] work," and that there was a "job waiting for him" if the court declined to sentence him to prison. (*Id.*, Ex. L, at 66-67). Next, Mr. Matthews addressed the court. He admitted that he had used cocaine, and he "apologize[d]" for lying to his probation officer about his drug use. (*Id.* at 69-71). The prosecutor recommended a sentence of 81 months in prison, while Mr. Matthews's counsel argued for "modif[ying]" his probation by imposing "a condition to complete drug classes and treatment." (*Id.* at 72-73). The court continued the sentencing, indicating that it would "take everything [it had] heard here today" and "think about it some more." (*Id.* at 74).

During the final hearing, the court revoked Mr. Matthews's probation and sentenced him to twenty years in prison. (*Id.*, Ex. M, at 80-81). The court explained:

---

[1] Under Florida law, "[w]hen a court resentences a defendant after revoking his probation, . . . it is sentencing the defendant for the original offense, not for the conduct constituting the violation." *Shields v. State*, 296 So. 3d 967, 971 (Fla. 2d DCA 2020). The "original offense" in this case was kidnapping, a first-degree felony "punishable by imprisonment for a term of years not exceeding life." Fla. Stat. § 787.01(2). Accordingly, the maximum sentence Mr. Matthews faced for violating his probation was life in prison. *See Ferrera v. State*, 39 So. 3d 1281, 1282 n.1 (Fla. 5th DCA 2010) ("[T]he law generally allows the trial court to impose any sentence that could have originally been imposed on the charge, up to the statutory maximum penalty, upon finding a willful and substantial violation of probation.").

I have heard argument from both sides in connection with this case in support of the sentencing here today. I have reviewed the court file[,] including the original Arrest Affidavit, the original Information, the amended Information, as well as the Court's—the letter the Court received regarding his violation from 2015. In this case Mr. Matthews entered a plea to Kidnapping, a first-degree felony punishable by life. The scoresheet shows a prior record . . . of Child Abuse, a Level Six offense, and a prior Theft, misdemeanor.

In reviewing this case I note that the alleged violation from 2015, the Court advised the Probation Department to take no further action and continue to supervise if he was in compliance. We then received the violation for using cocaine while on this sentence. The original sentence was a downward departure. And quite apparent to the Court it was, as well, a charge-bargained sentence as well, clearly because it contained requirements similar to those of sex offenders. At the time of sentencing originally, based on the negotiated plea and charge, there was a downward departure and it was substantial, he was sentenced to 36 months, followed by five years of probation. It is clear that he has gotten numerous breaks throughout, but breaks on this case have now come to an end.

I considered all of the letters from his employer, his employer and employees. I do note that none of the letterhead contained McDonald's Corporation in it; although, all of the people that submitted letters were employees at the McDonald's Corporation. And while I have no doubt that Mr. Matthews has been, um, an employee that his fellow employees like, his supervisors like, and that he's done a good job working at McDonald's, I don't find that that is mitigation sufficient for the Court to do anything less than sentence accordingly.

(*Id.* at 79-80).

Mr. Matthews appealed, and the state appellate court *per curiam* affirmed his sentence. (*Id.*, Exs. N, P). He subsequently moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. X). The state postconviction court, presided over by the same judge who had sentenced Mr. Matthews for violating probation, rejected his claims, and the state appellate court affirmed without opinion. (*Id.*, Exs. Y, BB). Mr. Matthews also filed a petition alleging ineffective assistance of appellate counsel. (*Id.*, Ex.

4

R). The petition was summarily denied. (*Id.*, Ex. U). This federal habeas petition followed. (Doc. 1).

## II.     Standards of Review

### A.     AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Matthews's sentence, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.    Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The

6

exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.  Ineffective Assistance of Counsel

Mr. Matthews alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of

professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Mr. Matthews must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Matthews must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### III.   Discussion

#### A.   Ground One, Sub-Claim A

Mr. Matthews contends that his counsel was ineffective for failing to object to the court's "defective admissions colloquy." (Doc. 1 at 11). During the change-of-plea hearing, the court did not inform Mr. Matthews that he faced a maximum sentence of life imprisonment if he admitted to the violations. (Doc. 16-1, Ex. K, at 57-59). Counsel did not object to this omission, thus failing to "preserve [the issue] for direct appeal and put the court on notice of" its alleged error. (Doc. 1 at 11). In his Rule 3.850 motion, Mr. Matthews elaborated on his ineffective-assistance claim, alleging that counsel likewise failed to inform him of the "potential maximum sentence" he faced if he admitted to violating his probation. (Doc. 6-1, Ex. X, at 238). According to Mr. Matthews, he would have pled "not guilty" and "proceeded to a violation hearing" if he had known that he faced a maximum sentence of life imprisonment. (Doc. 1 at 11; *see also* Doc. 16-1, Ex. X, at 236-37).

The state postconviction court, presided over by the same judge who sentenced Mr. Matthews, rejected this claim of ineffective assistance. The court explained that "[a]n admission to a violation of probation is much different from an admission of guilt[] to the originally charged crime." (Doc. 16-1, Ex. Y, at 304). According to the court, Mr. Matthews had "two options" for dealing with the alleged probation violations: "admit to the violation[s] and proceed to sentencing or deny the violation[s] and receive a hearing." (*Id.*) As noted above, Mr. Matthews "was alleged to have violated the conditions of probation by testing positive for cocaine" and lying to his probation officer about it. (*Id.* at

305). In the court's view, "[t]his positive drug test gave very little room for [Mr. Matthews] to argue that he did not violate his probation." (*Id.*) Thus, the court found it "highly likely" that Mr. Matthews "would have been found guilty of violat[ing] probation" following a contested violation hearing. (*Id.*) In that case, the court "would have [] heard the same evidence in consideration of sentencing" and reached "the same conclusion regarding [Mr. Matthews's] sentence"—that is, it would have imposed a twenty-year term of imprisonment. (*Id.*) For these reasons, the court held that even if Mr. Matthews was not advised of the "maximum sentence he was exposed to upon admitting to the violation," he "failed to adequately establish prejudice" from the omission. (*Id.*)

The rejection of this claim was reasonable. To show prejudice in the context of a guilty plea to a probation violation, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on" proceeding with a violation hearing. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Courts should not upset a plea solely because of *post hoc* assertions from [the petitioner] about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, the petitioner must "convince the court that a decision to reject [a] plea [] would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2015). A decision to reject a plea and proceed to a violation hearing may not be rational where the petitioner "face[s] overwhelming evidence of guilt" and has no valid defenses. *Id.*; *see also Sierra v. Fla. Dep't of Corr.*, 657 F. App'x 849, 852 (11th Cir. 2016) ("With a video recording of the crime and no valid defenses, it would not have been rational for [petitioner] to have rejected the plea agreement and

10

proceeded to trial."); *Singleton v. Sec'y Dep't of Corr.*, No. 8:07-cv-1419-VMC-MAP, 2009 WL 975783, at *4 (M.D. Fla. Apr. 9, 2009) ("The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial.").

Mr. Matthews fails to establish a "reasonable probability" that, had he been advised of the maximum sentence, "he would not have pleaded guilty and would have insisted on" a violation hearing. *Hill*, 474 U.S. at 59. As the state postconviction court explained, Mr. Matthews was accused of violating his probation after he tested positive for cocaine. (Doc. 16-1, Ex. H). Mr. Matthews does not explain why it "would have been rational" for him to contest these allegations at a violation hearing. *Diveroli*, 803 F.3d at 1265. He does not advance any possible defense to the charges. Nor does he articulate any benefit he would have received from requiring the State to prove the allegations at a hearing. Instead, Mr. Matthews simply asserts that, had counsel informed him of the maximum penalty, he "would have chose[n] to plead not guilty and proceeded to a violation hearing." (Doc. 1 at 11). Mr. Matthews's "mere allegation that he would have insisted on [a violation hearing] but for his [] counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002).

Mr. Matthews also cannot show prejudice because he was on notice that he faced a maximum sentence of life imprisonment if he violated his probation. As noted above, Mr. Matthews pled guilty to one count of kidnapping. The signed plea agreement indicated that the statutory maximum sentence for kidnapping was life imprisonment. (Doc. 16-1, Ex. C, at 9). Likewise, the sentencing scoresheet, which Mr. Matthews agreed was "fully

explained" to him, reflected that the "maximum sentence" for kidnapping was life imprisonment. (*Id.*, Ex. X, at 271). Shortly after the court imposed sentence for the kidnapping charge, it entered an order of probation. That order informed Mr. Matthews that, if he "violate[d] any of the conditions of [his] probation," the court "may revoke [his] probation . . . and impose any sentence that it might have imposed before placing [him] on probation." (*Id.*, Ex. E, at 23). Thus, because Mr. Matthews was on notice that a violation of probation could result in a sentence of life imprisonment, he cannot show prejudice from counsel's alleged failure to advise him of the statutory maximum. *See Aldridge v. Sec'y, Dep't of Corr.*, No. 1:13-cv-206-MP-GRJ, 2016 WL 7480398, at *17 (N.D. Fla. Oct. 5, 2016) (finding no prejudice from counsel's failure to advise of statutory minimum or maximum sentence because petitioner "was on notice that he could be sentenced to a term of imprisonment of a maximum of seventy-five years' imprisonment for the offenses he faced"), *adopted by* 2016 WL 7478978 (N.D. Fla. Dec. 29, 2016).

Ground One, Sub-Claim A is denied.

## B.     Ground One, Sub-Claim B

Mr. Matthews also contends that the court violated his right to due process by failing to "inform him of the potential maximum consequences of admitting to the [violations of probation]" during the change-of-plea hearing. (Doc. 6-1, Ex. X, at 237; *see also* Doc. 1 at 11). Respondent argues that Ground One, Sub-Claim B is procedurally defaulted, but the Court need not reach that issue because the claim fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

"Defendants involved in revocation proceedings are entitled to certain minimal due process requirements." *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). Specifically, due process requires (1) written notice of the claimed violations, (2) disclosure of the evidence against the defendant, (3) an opportunity to be heard and present evidence in person, (4) the right to confront and cross-examine witnesses, (5) a "neutral and detached" hearing body, and (6) a written statement identifying the evidence relied upon and the reasons for revoking probation. *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973).

Neither the Supreme Court nor the Eleventh Circuit has held, however, that due process requires a court to advise a defendant of the statutory maximum penalty before revoking probation. *See United States v. Johns*, 625 F.2d 1175, 1176 (5th Cir. 1980) (declining to "reach" question of "whether the due process safeguards of *Boykin v. Alabama*[, 395 U.S. 238 (1969)] apply to probation revocation proceedings"); *United States v. Barefoot*, 342 F. App'x 473, 478 (11th Cir. 2009) ("[N]o binding case law addresses whether *Boykin*'s requirement that a plea be entered knowingly and voluntarily applies in the context of revoking supervised release.").[2] And at least one circuit has held that due process does not require a court to "apprise[]" a defendant "at the revocation hearing of the maximum and minimum penalties for violating his probation." *United States v. Rapert*, 813 F.2d 182, 185 (8th Cir. 1987).

---

[2] *Boykin* held that due process requires "an affirmative showing" that a "guilty plea" is "intelligent and voluntary" before a trial court may accept the plea. 395 U.S. at 242. To ensure that a plea is knowing and voluntary, the Supreme Court stated that trial courts should conduct an "examination of the defendant which should include, *inter alia*, an attempt to satisfy itself that the defendant understands . . . the permissible range of sentences." *Id.* at 244 n.7.

The Court need not decide whether due process compels a court to advise a defendant of the maximum penalty before revoking his probation. Even assuming that such a right exists, Mr. Matthews is not entitled to relief because any error in failing to advise him of the maximum sentence was harmless. *See Johns*, 625 F.2d at 1176 (holding that "[e]ven if the district court erred under *Boykin* . . . it would not be reversible error" because the record showed that any error was "harmless"). "On collateral review, a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the [outcome of the proceedings]." *Burns v. Sec'y, Fla. Dep't of Corr.*, 720 F.3d 1296, 1305 (11th Cir. 2013) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Thus, Mr. Matthews must show that the court's failure to advise him of the maximum sentence had some "effect on [his] decision to plead guilty." *Dansberry v. Pfister*, 801 F.3d 863, 869 (7th Cir. 2015).

Mr. Matthews fails to make the required showing. Two years into his term of probation, a warrant was issued for his arrest after he tested positive for cocaine and lied to his probation officer about his drug use. (Doc. 16-1, Ex. H). As explained above, Mr. Matthews does not advance any defense to these charges, nor does he articulate any benefit he would have received from requiring the State to prove the violations at a hearing. In these circumstances, there is no basis to conclude that, had the trial court advised Mr. Matthews of the maximum sentence, he would have elected to contest the allegations at a violation hearing. *See Dansberry*, 801 F.3d at 869 (holding that any error in failing to properly advise defendant of mandatory minimum sentence was harmless because "there is no evidence in the record to suggest[] that [defendant's] mistaken belief [regarding the

14

mandatory minimum] had any effect on his decision to plead guilty"). Moreover, Mr. Matthews was on notice of the maximum penalty through the signed plea agreement and the order of probation, which together made clear that he faced a possible sentence of life imprisonment if he violated his probation. (Doc. 16-1, Ex. C, at 9; *id.*, Ex. E, at 23). Accordingly, because there is no evidence that the court's failure to advise Mr. Matthews of the maximum sentence affected his decision to plead guilty, any error in that regard was harmless. *See Croll v. Phelps*, No. 11-cv-214-NLH, 2012 WL 946769, at *6 (D. Del. Mar. 19, 2012) ("[E]ven if the [] judge's failure to advise Petitioner of the maximum possible sentence for the second degree assault charge triggers constitutional concerns, Petitioner is not entitled to habeas relief for this [c]laim because any error in this regard was harmless.").

Ground One, Sub-Claim B is denied.

### C.    Ground Two

Mr. Matthews contends that the court violated his right to due process during sentencing by "consider[ing] . . . a non-existent [probation] violation that was alleged in 2015." (Doc. 1 at 13). According to Mr. Matthews, he "was never arrested, nor brought before the courts for any violation in 2015." (*Id.*) Thus, the court allegedly "considered improper sentencing factors" when it referred to the 2015 probation violation. (*Id.*) Mr. Matthews further contends that his counsel was ineffective for failing to object to the court's "improper . . . consideration" of the "non-existent violation." (*Id.*)

Respondent maintains that Ground Two is unexhausted and procedurally defaulted. (Doc. 16 at 20). For the reasons explained below, Mr. Matthews's due-process and ineffective-assistance claims are meritless even on *de novo* review. Accordingly, the Court

need not address whether they are defaulted. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review.").

"A defendant has a due process right . . . not to be sentenced based on false or unreliable information." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010); *see also Roberts v. United States*, 445 U.S. 552, 556 (1980) ("We have . . . sustained due process objections to sentences imposed on the basis of misinformation of constitutional magnitude."); *United States v. White*, 868 F.3d 598, 603-04 (7th Cir. 2017) (applying *Roberts* to sentencing after revocation of supervised release). "To prevail on a challenge to a sentence based on the consideration of such information, a defendant must show (1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence." *Ghertler*, 605 F.3d at 1269. The defendant must make "a convincing showing that the introduction of specific constitutionally infirm evidence had an ascertainable and dramatic impact on the sentencing authority." *United States v. Sjeklocha*, 114 F.3d 1085, 1089 (11th Cir. 1997).

Mr. Matthews fails to meet his "burden of showing that the court explicitly relied on" false or unreliable information during sentencing. *Ghertler*, 605 F.3d at 1269. According to Mr. Matthews, the court improperly based its sentencing decision on "a non-existent [probation] violation that was alleged in 2015." (Doc. 1 at 13). Mr. Matthews appears to contend that the court acted on the erroneous assumption that he had in fact

violated his probation in 2015. (*Id.*) But the court made no such finding. As noted above, in March 2015, Mr. Matthews's probation officer filed a "technical violation notification letter," informing the court that he had violated the mandatory-curfew condition of his probation. (Doc. 16-1, Ex. G). The court indicated that "[n]o further action was required" and ordered probation to "[c]ontinue to supervise" Mr. Matthews "if [he] [was] now in compliance." (*Id.*)

During the final sentencing hearing, the court took note of Mr. Matthews's "*alleged* violation from 2015," explaining that it had "advised the Probation Department to take no further action and continue to supervise if he was in compliance." (*Id.*, Ex. M, at 79 (emphasis added)). The court went on to state that it subsequently "received the [2017] violation for using cocaine." (*Id.*) After noting that the "original sentence" for kidnapping was a "downward departure," the court found that Mr. Matthews had "gotten numerous breaks" during the underlying criminal case and the probationary term of his sentence. (*Id.* at 79-80). Thus, the transcript makes clear that the court did not base its sentence on a finding that Mr. Matthews violated his probation in 2015. At most, the court reasonably determined that Mr. Matthews received a "break[]" when it elected to "take no further action" on the "alleged" 2015 violation. (*Id.* at 79). In other words, the court simply noted that, back in 2015, it had declined to issue a warrant for Mr. Matthews's arrest based on the allegation that he had violated curfew. In recounting this procedural history, the court did not "explicitly rel[y] on" the truth of the probation officer's allegation. *Ghertler*, 605 F.3d at 1269.

Because the court did not consider any "materially false or unreliable" information in sentencing Mr. Matthews, his due-process claim lacks merit. *Id*. And because "[a] lawyer cannot be deficient for failing to raise a meritless claim," it follows that Mr. Matthews's counsel was not ineffective for failing to raise a due-process challenge. *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). Ground Two is denied.

### D.   Ground Three

Mr. Matthews contends that, during sentencing on the probation violations, the court violated his right to due process by "incorrectly" finding that his three-year sentence for kidnapping was a "downward departure." (Doc. 1 at 15). According to Mr. Matthews, this "original sentence" was the result of a "negotiated plea," not a "downward departure." (*Id.*) In addition to arguing that the court violated his right to due process, Mr. Matthews faults counsel for failing to "object" to the court's allegedly "erroneous and incorrect finding[]" that the original sentence was a downward departure. (*Id.*)

The state postconviction court found that counsel was not "deficient for failing to object to the judge's characterization of the case." (Doc. 16-1, Ex. Y, at 306). The court explained that Mr. Matthews "was originally charged with sexual battery—a life felony." (*Id.*) Mr. Matthews ultimately pled guilty "to the negotiated charge of kidnapping—a crime which is also subject to a maximum sentence of life in prison." (*Id.*) As the court correctly noted, Mr. Matthews's scoresheet reflected that the "lowest permissible prison sentence was 75.9 months—a little more than 6 years." (*Id.*) "[B]ecause of the negotiated plea," however, Mr. Matthews "was sentenced to three (3) years in prison followed by five (5) years of probation." (*Id.*) The court noted that "[t]his [was] a departure from the

18

guidelines." (*Id.*) Thus, "although the original plea agreement did not specifically say 'downward departure,' the record [was] clear that the sentence was less than what the guidelines provided." (*Id.*)

The rejection of Mr. Matthews's ineffective-assistance claim was reasonable.[3] Mr. Matthews appears to contend that, because his three-year sentence for kidnapping was the result of a "negotiated plea," it cannot accurately be characterized as a "downward departure." (Doc. 1 at 15). But Florida courts routinely refer to sentences negotiated pursuant to plea bargains as "downward departures" from the sentencing guidelines. *See, e.g.*, *State v. Martinez*, 103 So. 3d 1013, 1017 (Fla. 3d DCA 2012) ("[Defendant] initially escaped a 21.15 month sentence [*i.e.*, the minimum guideline sentence] because the State agreed to a downward departure as part of a plea bargain."); *Correa v. State*, 43 So. 3d 738, 739 n.1 (Fla. 2d DCA 2010) ("The sentence of two years' community control—which was agreed to by the State in a negotiated plea—represented a substantial downward departure from the minimum permissible sentence which could be imposed under the sentencing guidelines."); *Rivera v. State*, 954 So. 2d 1216, 1218 (Fla. 3d DCA 2007) ("Under the scoresheet, the defendant's minimum guideline sentence would be 8.5 years, and the three-year negotiated sentence was a downward departure.").

---

[3] The state postconviction court did not address the due-process component of Mr. Matthews's claim. (Doc. 16-1, Ex. Y, at 306). Although Mr. Matthews properly exhausted the ineffective-assistance aspect of the claim, it appears that he failed to exhaust the argument that the court violated his right to due process by referring to the kidnapping sentence as a downward departure. This Court need not address exhaustion, however, because the due-process claim fails on *de novo* review. *See Berghuis*, 560 U.S. at 390 ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review.").

Thus, the court did not make an "erroneous and incorrect finding[]" when it referred to Mr. Matthews's three-year sentence for kidnapping as a downward departure from the lowest permissible sentence of 75.9 months. (Doc. 1 at 15). Because Mr. Matthews was not "sentenced based on false or unreliable information," any due-process challenge based on the court's description of his original sentence would have been meritless. *Ghertler*, 605 F.3d at 1269. And because the due-process claim lacks merit, counsel was not ineffective for failing to raise it. *See Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim . . . ."). For these reasons, Ground Three is denied.

### E.    Ground Four

Mr. Matthews contends that his counsel was ineffective for failing to seek recusal of the judge who sentenced him for violating probation. (Doc. 1 at 17). According to Mr. Matthews, he informed counsel that the judge had "previously presid[ed] over a civil injunction case" against him. (*Id.*) In that earlier proceeding, Mr. Matthews's mother had "sought an order [of] protection based on [his] unfounded threats of violence against her and threats of destruction to her property." (Doc. 16-1, Ex. X, at 244). Mr. Matthews faults counsel for failing to "object[] or mo[ve] the courts to recuse the judge" based on this alleged conflict of interest. (Doc. 1 at 17).

The state postconviction court rejected this claim, finding that Mr. Matthews "failed to adequately allege any deficiency on behalf of counsel." (Doc. 16-1, Ex. Y, at 307). Citing Florida law, the court explained that "to raise a legally sufficient claim that a judge should be disqualified from presiding over a case, the [d]efendant must set forth[] 'facts and circumstances that would lead a reasonable person in the movant's position to fear that he

will not receive impartial, fair treatment.'" (*Id.* (quoting *Rivera v. Bosque,* 188 So. 3d 889, 891 (Fla. 5th DCA 2016)). The court noted Mr. Matthews's allegation "that because the same judge presided over an injunction case involving him, as well as the present case, his attorney should have moved to disqualify him." (*Id.*) The court found that Mr. Matthews "failed to set forth circumstances sufficient to raise a legally sufficient argument in support of disqualification." (*Id.*) Accordingly, the court concluded that counsel could not "be found deficient for failing to move to disqualify the trial judge, when legally sufficient grounds did not exist to support such motion." (*Id.*)

The rejection of this claim was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Here, the state court found that counsel was not deficient because any motion to recuse would have been meritless under Florida law. (Doc. 16-1, Ex. Y, at 307). Thus, the state court "already has told us how the issues would have been resolved under Florida state law had [counsel] done what [Mr. Matthews] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). This Court is bound to defer to that determination. *See Queen v. Sec'y, Fla. Dep't of Corr.*, No. 3:19-cv-1477-HLA-JBT, 2023 WL 168782, at *12 (M.D. Fla. Jan. 12, 2023) ("As a federal habeas court, this Court must defer to the state post-conviction court's conclusion that, under state law, Petitioner's allegations were insufficient to show that Judge Johnson was biased, such that trial counsel had any Sixth Amendment obligation to move for her disqualification."); *Post v. Sec'y*, No. 5:19-cv-382-

VMC-PRL, 2022 WL 4384487, at *7 (M.D. Fla. Sept. 22, 2022) (rejecting ineffective-assistance claim because "the state court's determination that the motion to disqualify was legally insufficient . . . rests upon an application of Florida law," and a federal court "must defer to that finding in reviewing the state court's ruling on [petitioner's] *Strickland* claim"). Accordingly, Ground Four is denied.

### F.     Ground Five

Finally, Mr. Matthews argues that counsel was ineffective for failing to object to the court's imposition of the "standard conditions" of probation following his guilty plea to kidnapping. (Doc. 1 at 19). Mr. Matthews's signed plea agreement stated that he would be subject to five years of "probation (with sex-offender conditions)." (Doc. 16-1, Ex. C, at 9). The agreement listed several sex-offender conditions, including a prohibition on "unsupervised contact" with children "unless authorized by [the] court." (*Id.* at 9-10). This list was prefaced by the statement that Mr. Matthews's "probation conditions include[d], but [were] not limited to[,] the following" terms. (*Id.* at 9). The agreement did not expressly state that, in addition to the sex-offender conditions, Mr. Matthews would also be subject to Florida's standard conditions of probation.[4]

Shortly after sentencing on the kidnapping charge, the court entered a judgment providing, among other things, that Mr. Matthews would serve five years "on standard probation with sex offender conditions." (*Id.*, Ex. D, at 14). The court also entered an order of probation that included both standard conditions and sex-offender conditions. (*Id.*, Ex.

---

[4] Florida's "standard conditions of probation" are those listed in Fla. Stat. § 948.03.

E). Among the standard conditions were requirements that Mr. Matthews (1) "live without violating any law," (2) refrain from "possess[ing] any drugs or narcotics unless prescribed by a physician," and (3) "promptly and truthfully answer all inquiries directed to [him] by the court or the [probation] officer." (*Id.* at 21). After Mr. Matthews tested positive for cocaine and lied to his probation officer about his drug use, he pled guilty to violating these three conditions of his probation and was sentenced to twenty years' imprisonment. (*Id.*, Exs. H, I, K).

In his federal habeas petition, Mr. Matthews argues that the court's imposition of the standard conditions of probation was unlawful because those conditions "were not a part of [his] negotiated plea agreement." (Doc. 1 at 19). Thus, according to Mr. Matthews, counsel should have "object[ed] to these non-existent conditions" on the ground that they were not listed in the "binding negotiated plea agreement." (*Id.*) Mr. Matthews appears to contend that, had counsel objected to the standard conditions, the court would not have imposed them, and thus his probation could not have been revoked for violating them. (*Id.*) As a result, but for counsel's alleged error, Mr. Matthews "would not have been exposed to the 20[-]year sentence that he is now suffering." (*Id.*)

Mr. Matthews acknowledges that he did not raise this ineffective-assistance claim in state court. (*Id.* at 19-20). Because he cannot return to state court to present the claim in an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), it is procedurally defaulted. *See Smith*, 256 F.3d at 1138.

Mr. Matthews seeks to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that a petitioner may establish cause for the default of a claim of

23

ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit." *Martinez*, 566 U.S. at 14, 17. A petitioner shows that his defaulted claim is "substantial" under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

*Martinez* does not excuse the default of Ground Five because the underlying ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. Mr. Matthews has not cited—and this Court cannot locate—any authority holding that a Florida trial court cannot impose standard conditions of probation unless they are expressly set forth in a plea agreement. To the contrary, the Florida Supreme Court has held that all defendants are on "constructive notice" of the standard conditions of probation. *State v. Hart*, 668 So. 2d 589, 592 (Fla. 1996). As a result, a court may impose such conditions "in a written order of probation even if not orally pronounced at sentencing."[5] *Id.* Furthermore, the plea agreement in this case did not state that Mr. Matthews would be subject only to sex-offender conditions. Indeed, the agreement's list of sex-offender conditions was prefaced by the statement that Mr. Matthews's "probation conditions include[d], but [were] not

---

[5] Courts in other jurisdictions have held that "standard conditions of probation are present and binding even though they have not been expressly spelled out in a plea agreement." *McKinney v. State*, 196 A.3d 520, 533 (Md. Ct. App. 2018); *see also People v. Lopez*, 78 Cal. Rptr. 2d 66, 80 (Cal. Ct. App. 1998) ("A punishment or related condition that is insignificant relative to the whole, such as a standard condition of probation, may be imposed whether or not it was part of the express [plea] negotiations.").

limited to," the terms set out in the agreement. (Doc. 16-1, Ex. C, at 9). In these circumstances, there is no basis to conclude that the court would have omitted the standard conditions of probation had Mr. Matthews's counsel objected to them at sentencing. *See Fraysur v. State*, 82 So. 3d 836, 837 (Fla. 4th DCA 2011) (holding that, because "the statute and rule provide constructive notice to the defendant that the [standard] probation conditions can be imposed," defendant's due-process rights were not violated despite lack of "notice of the general conditions of probation at sentencing").

Because any objection to the standard conditions of probation would have been meritless, counsel was not ineffective for failing to challenge them during sentencing or otherwise. *See Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim . . . ."). Therefore, Mr. Matthews's ineffective-assistance claim is not substantial under *Martinez*, and Ground Five is barred from federal habeas review.[6]

Accordingly, the Court **ORDERS**:

1. Mr. Matthews's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Matthews and to **CLOSE** this case.

3. Mr. Matthews is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . .

---

[6] Because Ground Five is procedurally defaulted, the Court need not address Respondent's argument that the claim is untimely. *See Jeter v. Sec'y, Fla. Dep't of Corr.*, 479 F. App'x 286, 288 n.2 (11th Cir. 2012) ("Because we affirm the dismissal of the petition on the grounds of procedural default, we do not address the timeliness issue.").

. only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Matthews must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Matthews has not made the requisite showing. Because Mr. Matthews is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on November 21, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

26